# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

January 20, 2020

The Honorable Leonard P. Stark                   VIA ELECTRONIC FILING
United States District Court
844 N. King Street
Wilmington, DE 19801

       Re:     *Biogen International GmbH v. Banner Life Sciences LLC*,
                 Civil Action No. 18-2054-LPS

Dear Chief Judge Stark:

       During the January 17, 2020 teleconference between Biogen International GmbH ("Biogen") and Banner Life Sciences LLC ("Banner"), the Court ordered the parties to meet and confer regarding proposed language for the final judgment and injunction by the Court. In the event the parties could not agree on a single version of the proposed judgment and injunction, the Court asked the parties to submit letters explaining the differences in their proposals. The parties worked cooperatively, and both sides made concessions in an effort to minimize the differences between the proposed orders for the Court. This letter addresses the differences between Biogen's and Banner's proposed orders and explains, respectfully, why the Court should enter Biogen's proposed order. Ex. 1.

       To provide context, Biogen has attached two orders, Exs. 2 and 3, entered in cases in which a temporary restraining order or injunction was granted by the district court while a plaintiff sought relief from the Federal Circuit. Both of these orders occurred in pharmaceutical cases in which a method of treatment patent claim was at issue. These orders are generally short and straightforward, granting a limited time period during which the court enjoins the defendant from launching its pharmaceutical product. Banner's proposed order, on the other hand, includes several uncommon and extraordinary demands, which would (1) effectively allow various infringing activities during the period of the TRO and disrupt the status quo the TRO is meant to maintain, (2) improperly limit Biogen's internal company decision-making and ongoing lawful commercial activities, and (3) be inconsistent with the Court's instruction to provide a security amount. The demands in Banner's proposed order would defeat the very purpose of the TRO during this limited time period in which Biogen will expeditiously seek relief from the Federal Circuit.

       First, Biogen cannot agree to Banner's language carving out from enjoined activities selling and offers for sale of its MMF-containing product to its customers, including pharmaceutical

wholesalers and distributors because it is an attempt to allow infringing activities during the period covered by the temporary injunction. This would defeat the very purpose of the temporary restraining order, which is to maintain the status quo for a very temporary period while Biogen seeks relief from the Federal Circuit. Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) ("One of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties.")

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Evidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe. AstraZeneca LP v. Apotex, Inc., 633 F.3d 1042, 1059 (Fed. Cir. 2010) (accord Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd., 887 F.3d 1117, 1129 ("Where the proposed label instructs users to perform the patented method . . . the proposed label would provide evidence of the ANDA applicant's affirmative intent to induce infringement.")). While Banner tries to argue that the Court should only enjoin direct sales to patients (or healthcare providers), Banner would be inducing infringement by marketing its MMF-containing product to its customers. Orders by courts in this specific context— granting temporary restraining orders or limited injunctions for a patent covering methods of treatment— typically restrain defendants from "launching" or "distributing" their generic products during the temporary period. These terms appropriately capture sales and offers for sale.

In one case, AztraZeneca LP v. Breath Limited, C.A. No. 08-1512 (consolidated) (D.N.J. April 2, 2013), the court enjoined defendants from "launching and distributing their generic versions" of PULMICORT RESPULES® for ten days. Ex. 2. The judge in another case granted a temporary injunction where defendants were "enjoined for a period of (14) days from the date of entry of the Final Judgment in this matter from launching in the U.S. a generic version of Strattera®…" Ex. 3. Thus, Biogen cannot agree to Banner's language attempting to allow infringing activities during the period of this TRO.

Importantly, as a practical matter, Banner's proposal amounts to no injunction because it is not clear how the Court possible could constrain the actions of distributors and other non-parties to this action over which the Court lacks jurisdiction.

Further, Biogen cannot agree with Banner's attempt to use the Court's proposed order to limit Biogen's private and internal company decisions and ongoing business activities unrelated to Banner in an anticompetitive manner. The litigation does not give Banner rights in Biogen's patent nor rights to restrain Biogen's competitive lawful activities. Banner tries to have the Court limit Biogen from, e.g., lowering the price of its products, changing any marketing surrounding its products, or increasing its sales volume. These are internal company decisions that do not relate in any way whatsoever to this temporary injunctive period. Biogen has pricing and other commercial discussions with its various suppliers and distributors on an ongoing basis that are entirely unrelated to Banner. This proposed provision by Banner would have an anticompetitive effect and is in no way justified or linked to any rights Banner has. Nothing in this litigation and temporary restraining order would justify Banner obtaining injunctive relief against Biogen.

The Honorable Leonard P. Stark
January 20, 2020
Page 3

      Finally, Biogen cannot agree to Banner's multiple paragraphs related to a corporate security or bond. At the request of the Court, Biogen has proposed a security amount, which Banner has never demonstrated is an unrealistic amount to cover its potential damages during this short, two-week period of injunctive relief. In the absence of typical information relevant to this amount, which Banner has repeatedly refused to provide to Biogen despite multiple attempts by Biogen to obtain it, this proposed security amount is Biogen's good faith proposal of an appropriate amount to protect Banner during the period of the TRO, if Banner could prove actual damages as required under the law.

      For the foregoing reasons, Biogen cannot agree to certain proposed language, outlined above, for the proposed final judgment and order. Accordingly, Biogen respectfully requests that the Court enter Biogen's proposed final judgment and order, granting Biogen temporary injunctive relief while it expeditiously seeks relief from the Federal Circuit.

Respectfully,

*/s/ Steven J. Balick*

Steven J. Balick (#2114)

SJB/mlk
Attachments

cc:    Counsel of Record (via electronic mail; w/attachments)

{01528017;v1 }