IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BIOGEN INTERNATIONAL GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 18-2054-LPS |
| BANNER LIFE SCIENCES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**UNOPPOSED MOTION TO REDACT PORTION OF
JANUARY 17, 2020 TRANSCRIPT**

Plaintiff Biogen International GmbH ("Biogen"), by and through its respective undersigned counsel and pursuant to Rule 5.2 of the Federal Rules of Civil Procedure and this Court's Policy on the Electronic Availability of Transcripts of Court Proceedings, hereby moves to redact a limited portion of the Transcript of the January 17, 2020 telephonic hearing, based on the following:

1.      On January 17, 2020, the Court held a status telephone conference to discuss a proposed form of final judgment and request for an injunction in this matter. During this hearing, Biogen's highly confidential financial and business information was discussed.

2.      Biogen seeks to redact a portion of the transcript that contains Biogen's highly confidential financial and business information. Biogen in good faith believes the disclosure of this information to the public would cause it competitive harm.

3.      Biogen's requested redaction is as follows: page 14, line 23. This redaction is set forth in Exhibit A, which is a full version of the Transcript with the proposed redaction highlighted.

4.       Courts routinely recognize that confidential and sensitive business information is the type of information that should be protected from public disclosure. *See e.g., Joint Stock Soc'y v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 396 (D. Del. 2000) (recognizing that consumer research studies, strategic plans, potential advertising or marketing campaigns and financial information are the type of sensitive business information entitled to protection); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (recognizing that "protection of a party's interest in confidential commercial information" is an exception to the right of public access); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993) ("Documents containing trade secrets or other confidential business information may be protected from disclosure.").

5.       Biogen respectfully requests that the Court order that: (i) the confidential information contained in the electronic transcript of the January 17, 2020 hearing be redacted; and (ii) any publicly available copies of the transcript of the January 17, 2020 hearing, including but not limited to transcripts that are or will be available by remote electronic access, shall be redacted as set forth in Exhibit B. A proposed form of order is attached as Exhibit C.

6.       Pursuant to D. Del. LR 7.1, counsel for Biogen conferred with counsel for Defendant and counsel for the Defendant stated that they do not oppose Biogen's motion.

ASHBY & GEDDES

/s/ Andrew C. Mayo

_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*
*Biogen International GmbH*

Of Counsel:

James B. Monroe
Eric J. Fues
Laura P. Masurovsky
Paul W. Browning
Li Feng
Andrew E. Renison
John E. Nappi
Jeanette M. Roorda
Aaron G. Clay
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Megan L. Meyers
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
271 17th Street NW, Suite 1400
Atlanta, GA  30363
(404) 653-6565

Dated:  February 6, 2020

# EXHIBIT A

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                               - - -
      BIOGEN INTERNATIONAL GmbH,
 4                                        :    CIVIL ACTION
               Plaintiff,                 :
 5      v                                 :
                                          :
 6      BANNER LIFE SCIENCES LLC,         :
                                          :    NO. 18-2054-LPS
 7               Defendant.
                                     - - -
 8
                            Wilmington, Delaware
 9                        Friday, January 17, 2020
                             Telephone Conference
10
                                 - - -
11
      BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge
12
                                 - - -
13    APPEARANCES:

14
                ASHBY & GEDDES
15              BY:  STEVEN J. BALICK, ESQ.

16                     and

17              FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
                BY:  PAUL W. BROWNING, ESQ., and
18                   LAURA P. MASUROVSKY, ESQ.
                     (Washington, District of Columbia)
19
                        Counsel for Plaintiff
20

21              SHAW KELLER, LLP
                BY:  KAREN E. KELLER, ESQ.
22
                       and
23

24
                              Brian P. Gaffigan
25                            Official Court Reporter
```

```
1    APPEARANCES:   (Continued)

2
                    PARKER POE, LLP
3                   BY:   C. KYLE MUSGROVE, ESQ.
                          (Charlotte, North Carolina)
4
                          and
5
                    PARKER POE, LLP
6                   BY:   ELIZABETH M. CROMPTON, ESQ.
                          (Washington, District of Columbia)
7
                             Counsel for Defendant
8

9

10

11

12

13                           - oOo -

14                     P R O C E E D I N G S

15              (REPORTER'S NOTE:  The following telephone

16   conference was held in chambers, beginning at 4:31 p.m.)

17              THE COURT:  Good afternoon, counsel.  This is

18   Judge Stark.  Who is there, please?

19              MR. BALICK:  Your Honor good afternoon.  Steven

20   Balick for the plaintiff, Biogen along with co-counsel from

21   the Finnegan Henderson firm, Laura Masurovsky and Paul

22   Browning.

23              THE COURT:  Okay.

24              MS. MASUROVSKY:  Good afternoon, Your Honor.

25              THE COURT:  Good afternoon.
```

1              MS. KELLER:  And good afternoon, Your Honor.

2    Karen Keller from Shaw Keller on behalf of -- Pharma; and

3    with us today is Paul --

4              THE COURT:  Ms. Keller, you are coming in and

5    out.  I really haven't heard much.

6              MS. KELLER:  Okay.  I'm sorry.  Hold on.

7              Sorry, Your Honor.

8              THE COURT:  Okay.

9              MS. KELLER:  It's Karen Keller; and with me on

10   the line is Kyle Musgrove and Elizabeth Crompton now at

11   Parker Poe; and also on the line is Claudia Harrington from

12   Banner.

13             THE COURT:  Okay.  Thank you.  I have my court

14   reporter here with me; and for the record, it is our case of

15   Biogen International, GmbH versus Banner Life Sciences, LLC,

16   Civil Action No. 18-2054-LPS.

17             I set this is a time to talk to you all about

18   how to proceed.  As I indicated in my order setting the

19   call, I have in front of me proposed final judgment orders.

20   My inclination is that I will enter final judgment and that

21   my work on this case is basically done, but that if the

22   defendants are not willing to say that they don't intend

23   to launch their product, I am open to the possibility of

24   trying to enjoin that launch for a couple of weeks if the

25   plaintiffs wish to pursue their opportunities to seek relief

1    in the Court of Appeals.

2            That is my thinking going into this but thought

3    it would be a good idea to talk to you all before I move

4    forward.  So with that, why don't I hear from the plaintiff

5    first.

6            MS. MASUROVSKY:  Thank you, Your Honor.  We do

7    appreciate the opportunity to discuss the best path forward.

8            As we indicated in our joint status report, we

9    do wish to ask the Court by motion to enjoin the defendants

10   pending appeal pursuant to the Federal Rule of Civil

11   Procedure 62(d) or, in the alternative, for a temporary or

12   preliminary injunction sufficient to allow us time to seek

13   injunctive relief from the Federal Circuit.

14           In order to seek relief from the Federal

15   Circuit, as the Court may know, under Federal Rules of

16   Appellate Procedure 8 and Federal Circuit Rule 8, we need

17   to first make a motion before the District Court and have

18   the Court, if it is not going to give us an injunction

19   pending appeal, to deny that motion.

20           We believe we have a compelling case for an

21   injunction pending appeal due to the difficult and arguably

22   conflicting legal issues that only the Federal Circuit can

23   resolve and the fact that the balance of harm tips in our

24   favor.  We are prepared to make that motion either by filing

25   papers which we have ready with a brief and be prepared to

1    submit to any kind of expedited briefing schedule or hearing

2    that the Court would like, or we are prepared to make our

3    motion orally, if the Court would entertain it orally on

4    this call, so that we can, if the Court's inclination is to

5    give us the 14 days in order to seek relief from the Federal

6    Circuit, to do so after getting a motion before the District

7    Court to meet the requirements of Appellate Rule 8.

8              We also would like to note, as we said in our

9    joint status report, that entry of final judgment does allow

10   the defendant to immediately obtain approval from the FDA

11   and, upon approval, to immediately launch if they were

12   intending to launch and therefore a traditional stay is not

13   sufficient to preclude that from happening and therefore

14   that is the reason we would be moving for an injunction

15   pending appeal or temporary injunction.

16             THE COURT:  Right.

17             MS. MASUROVSKY:  The last point --

18             THE COURT:  Yes, go ahead.

19             MS. MASUROVSKY:  Just since we are on a Friday,

20   at the close of business Friday, and Monday is a federal

21   holiday, it has come to our attention that if the Court is

22   inclined to give us the 14 days temporary relief that we

23   would seek in order to go before the Federal Circuit, we

24   could not get the Federal Circuit to start considering our

25   request for relief any earlier than Tuesday, and we would

1    ask that if the Court is willing to entertain our motion and

2    to allow us time to seek relief from the Federal Circuit

3    that nothing would be entered before Tuesday.

4              THE COURT:  All right.  I would assume, but --

5    well, let me, two related questions.

6              Have you been told anything further from the

7    defendants about whether they are planning to launch if I

8    enter final judgment?  And,

9              Related to that, my assumption is that even if I

10   enter final judgment at the end of this call, I assume the

11   FDA is closed until Tuesday, so I would assume they couldn't

12   get their final approval before Tuesday, but if that is

13   incorrect, I would like to know.

14             So to you, Ms. Masurovsky, any answers to those?

15             MS. MASUROVSKY:  I can answer that we have had

16   no more information than we have put in our joint status

17   report, which is we asked are they intending to go on the

18   market before June 20th, 2020?  And, if so, when?  And we

19   have had no response to that.

20             It is my understanding but not with any inside

21   knowledge, and I would defer to Banner itself, but the FDA

22   is closed on Monday and therefore they cannot obtain final

23   approval on Monday as well, but could first thing Tuesday

24   morning.  I assume that is the case but I don't have

25   firsthand knowledge of that.

1           THE COURT:  Okay.  Thank you.  We'll come back

2   to you, but I want to first have an understanding of the

3   defendant's position as to where we are at this point.  So

4   someone for Banner, please.

5           MR. MUSGROVE:  Yes, Your Honor.  This is Kyle

6   Musgrove.

7           With regard to the final judgment, as we stated

8   before, we believe that it is appropriate.  I understand

9   here that the concern seems not so much to be from Biogen

10  itself that final judgment be entered but more the launch

11  issue.

12          For the record, and I know what Your Honor said

13  and how you are inclined at this point.  We don't believe

14  an injunction would be proper for a few reasons, and I will

15  just be very brief about this.

16          One is obviously a likelihood of success, a

17  strong likelihood I believe is the appropriate standard for

18  an injunction here, and we don't believe that is appropriate

19  given Your Honor's careful consideration of the issues and

20  the opinion that was offered.

21          Certainly, the public interest here obviously

22  favors competition where there is no infringement of a patent;

23  so we believe the public interest favors us, especially when

24  we've been delayed by the 30-month injunction in any event.

25          Then, lastly, with regard to the irreparable

harm, I will say Biogen's counsel has said something about

that in the status report, but Biogen it has said nothing.

Biogen has been to the JP Morgan Health Conference, has said

nothing about this.  They haven't posted anything to the

SEC, they posted nothing on their website.  So as far as

this being some big event to them, there isn't any evidence

of that.

So we don't believe an injunction is appropriate,

but if Your Honor is inclined that way, we would like to at

least be heard on the scope of the injunction.

THE COURT:  All right.  So we're using the word

"injunction."  When I say that I'm inclined to enter final

judgment but then create a two week window essentially for

the plaintiff to see if the Federal Circuit wants to take

this up, you are saying, Mr. Musgrove, you oppose that and

you think the three factors you have identified disfavor

even that two week relief.  Is that what you are saying?

MR. MUSGROVE:  I would say that, Your Honor.  At

least as far as what we would call an injunction, yes.  And

so my client at this time, going to your earlier question,

was not inclined to agree to stay off the market itself.

THE COURT:  Right.  I guess, so, for me, the

situation is it just -- the plaintiff has appellate rights,

and I'm concerned about creating a complete emergency

arguably at the Federal Circuit when it took me admittedly

1    much longer to get to this opinion than I had hoped; and

2    I'm thinking another two weeks, while I can understand why

3    your client would be disappointed in that, it's only two

4    more weeks and then you are done with me, and unless the

5    Federal Circuit gets involved, then my injunction would

6    expire.

7              But that's my thinking.  I feel that those are

8    the type of concerns that are fair for me to consider in

9    connection with the injunction test.  But, Mr. Musgrove, if

10   I'm overlooking something or you want to add to what you

11   have said, I'm happy to hear it.

12             MR. MUSGROVE:  No.  Your Honor, I don't believe

13   I would add anything to what I said other than what I would

14   say is this:  To the extent you are inclined to ask for our

15   client to stay off the market or order it to do so, we would

16   ask obviously that the final judgment be entered, but we

17   would like to be heard on the scope of that injunction

18   particularly given that the patent here is a method of

19   treatment patent and certainly should not cover a number of

20   activities we can do in the interim, even if we were to be

21   enjoined from actually launching the product into

22   distribution channels if we were able to do so.

23             Obviously, we don't have FDA approval at this

24   point, so that could -- we're all speculating, that could

25   take some time, but we would want to be heard on that issue,

1    Your Honor, even if you were to enjoin us as well, or to

2    enter an order, however you would prefer to state it, that

3    we would refrain from being on the market.

4              THE COURT:  All right.  Can you confirm to your

5    knowledge that even if I entered final judgment today, that

6    you could not get final approval before next Tuesday?

7              MR. MUSGROVE:  Your Honor, I have to admit I do

8    not know that.  I would assume that we certainly would agree

9    as part of, if you were to enter an order more generally

10   holding us off the market, that we certainly would not, in

11   the interim -- let's say if we needed to negotiate the

12   specific provisions of that, to follow instructions from

13   Your Honor, that we would certainly not launch during the

14   pendency of putting something together to put in front of

15   Your Honor.  We are not in the situation to do that today.

16             THE COURT:  All right.  I think I will be coming

17   back to you as well, Mr. Musgrove.

18             But Ms. Masurovsky, is there anything you want

19   to respond to that you heard?

20             MS. MASUROVSKY:  Yes.  We do think, Your Honor,

21   that Rule 62(d) and 65(b) are exactly for this type of

22   scenario, preservation of the status quo where there is a

23   difficult or apparent conflict of the controlling authority

24   and the merits issues are substantial and difficult and make

25   them a fair ground for litigation.

1              It is a reasonable likelihood of success on the

2    merits, and particularly where there are close or difficult

3    questions of law and apparent conflict in the law under the

4    *Standard Havens* case, for example, which is 897 F2d 511

5    (1990), or in the D.C. Circuit, the *Washington Metro Area*

6    *Transit v Holiday Tours* case, 559 F2d 841.  These are

7    exactly the kinds of cases where the Court provides the kind

8    of relief.

9              We do think the balance of harm and the public

10   interest very much tips in our favor.  We have been on the

11   market.  Banner is not yet on the market.  We have invested

12   heavily in a new product that is a more tolerable type of

13   fumarate.  We brought that to market very recently; and

14   we are very concerned that we will suffer irreparable and

15   immediate harm if Banner, which apparently has conducted

16   testing in healthy volunteers but hasn't released the

17   results, if those tests were bad and the results were bad

18   and there is confusion between their product and our

19   product.  It would have immediate and significant effects

20   on our being able to market our new product and get it out

21   to doctors and patients with the right information.

22             So there are many different ways in which we

23   believe we could demonstrate immediate and irreparable harm

24   whereas Banner's harm, especially if it's another two weeks

25   that it would not be on the market, is more quantifiable.

1    So we do think we meet all of the four factors that would

2    support an injunction, particularly if the Court is going to

3    consider a temporary injunction so we can seek relief from

4    the Federal Circuit.

5              We are concerned if the Court enters final

6    judgment and there is any lag between entering final

7    judgment and the entry of any kind of enjoining of Banner,

8    that that does create a window in which they could sell

9    their product.

10              So we would formally move the Court on a

11    temporary basis pursuant to Rule 65 to give us time for

12    the Court to consider, if the Court is going to consider

13    briefing and responses, to get that before the Court so that

14    the status quo is preserved while the Court considers this

15    request.

16              THE COURT:  Do you dispute that come June of

17    2020, the defendants are going to be on the market, no

18    matter what?

19              MS. MASUROVSKY:  Well, we actually don't know.

20    Again, the public information is that they had a trial that

21    was completed in October of last year, but they have

22    released no results, no publication, no press releases; and

23    this suggests to us that maybe those results were not good,

24    and that maybe they really actually can't launch and/or

25    won't launch because compared to our product, Tecfidera,

1    they did the head-to-head study that they said they were

2    going to do.  Maybe it didn't come out so well, and that, of

3    course, would have a negative impact on us, but maybe they

4    are not going to release it to the public because of that.

5    We just don't know.  We actually just don't know.

6                THE COURT:  Right.  So if they don't launch and

7    can't get approval to launch, how is your client harmed?

8                MS. MASUROVSKY:  If they do not launch, which is

9    why we've asked, obviously we're in a "the elephant in the

10   room," so to speak.  We have a different situation.

11               But we have asked, and they won't tell us, so

12   we have to obviously protect against the possibility that

13   they're just not telling us because they want to surprise us

14   or whatever.

15               We are exposed to and seeking the protection of

16   the Court for this harm that is otherwise what would occur.

17   They have tentative approval.  As soon as the Court enters

18   final judgment, they are free to present that to the FDA.

19               The FDA then has no barriers to, as far as we

20   know, to granting them final approval; and the minute they

21   get that final approval, they are free, as far as we know,

22   to sell their product.  And,

23               Given what we submit is the difficult and close

24   and arguably conflicting precedent on which the decision

25   was based, and the balance of harm here, we think that it is

1  appropriate to enjoin Banner at least at a minimum until we

2  can get relief from the Federal Circuit pending appeal; and

3  we submit Your Honor would consider our papers, and we are

4  making a compelling case for that to be during the pendency

5  of the appeal or until June 20, whichever comes sooner.

6  THE COURT:  Right.  I was trying to focus on the

7  June 20th date because it would seem to me it is relevant

8  at least as to the issue of the balance of harms.  Doesn't

9  defendant have a window that exists only between now and at

10  the latest June 20th, 2020 to market their drug without

11  potential competition?

12  MS. MASUROVSKY:  Actually, that is the window

13  for us that we are pointing to for why we have the

14  irreparable harm to the product we just launched, because

15  we had expected to have the first mover benefits available

16  to us through June 20, 2020 whereas Banner is to be on the

17  market with its product as of June 20, 2020 regardless of

18  the decision and the activities in the litigation.

19  So actually we think the balance of harm,

20  because of the June 20, 2020 date, is squarely tipping in

21  our favor because we're the ones that had been counting on

22  the lack of competition in the fumarate area and invested

23  heavily in a few products,  ███████████████  to bring

24  this new product to the market with the understanding

25  based on the expectation that we would have our protection

particulars through June 20, 2020.  That is what was at risk

for us and we think subject to drastic and immediate harm if

Banner's product is launched prematurely before that date.

Yes, the window for which we are asking an

injunction is at most five months pending appeal.

THE COURT:  All right.  On the proposed final

judgments, because so far I'm still inclined to enter final

judgment, it's unclear to me other than the arguments about

the potential launch.  Do you have other arguments against

why I should wait to enter final judgment?  And do you have

objections to the specific form of final judgment that was

attached to DI 55?

MS. MASUROVSKY:  Your Honor, we would ask that

the Court again, if it is going to enter a final judgment,

enter it for the first next business day on Tuesday to give

us time to seek immediate relief.

We would also ask the Court to enter -- if it

is going to enter final judgment, to enter it in conjunction

with an injunction against Banner sales until we have the

Court of Appeals ruling.  An opportunity to get to the Court

of Appeals on our request for relief pending appeal.

Again, while they haven't told us they are going

to launch, they also have not said anything, and in response

to Your Honor's questions, we didn't hear anything that

suggested they are not going to launch.  We're still in the

1    same boat seeking the Court's injunction either pending

2    appeal or on a temporary basis to consider our arguments

3    so we don't have irreparable harm in the meantime, which

4    we believe would be immediate and drastic, and it is not

5    balanced because we are already on the market with a new

6    product and in a market that is very much in flux and which

7    could be very much harmed drastically by their launch

8    whereas again we're just asking in terms of them if they're

9    not already on the market being deferred for a particular

10   time which is much more easily quantifiable.

11            THE COURT:  What about the contention that your

12   claims are method of treatment claims?  The injunction you

13   want, would it extend to all activities, including sales, or

14   would it only be to prevent use and actual practice of the

15   method of treatment over the two weeks?

16            MS. MASUROVSKY:  We would be seeking injunction

17   against them selling their product.

18            THE COURT:  And on what basis?

19            MS. MASUROVSKY:  That it is the sale of the

20   product that has been covered by the -- it is the sale of

21   the product that will lead to the use of the product, and

22   that is the sole purpose of selling the product is to have

23   it be used.  There is no other purpose for selling the

24   product other than to have it used.

25            THE COURT:  Is there not potentially a point in

1    the distribution process between the defendant and a patient

2    that the injunction could apply to?

3                MS. MASUROVSKY:   So typically in these kinds

4    of pharmaceutical injunctions, even when it is a method of

5    use claim, it is the seller's sale that is enjoined because

6    it is, I guess from a practical standpoint, the most

7    practical place of which to have it be enjoined; and also

8    it is the party that is before the Court and it is not the

9    distributors or the pharmacist or the other many other

10   complicated downstream parties and corporations who might be

11   involved in clinical using it and certainly not the patient.

12               So as a sort of practical and legal matter, the

13   Court has jurisdiction over Banner, and it is the most

14   appropriate, in our view, way to handle a short -- and in

15   the way courts have done these injunctions in other cases

16   is to enjoin the seller even if the claims are method of use

17   claims because it is a natural consequence on the party

18   before the Court over whom the Court has the most immediate

19   jurisdiction.

20               THE COURT:   Okay.   On the proposed final

21   judgment, I have in front of me DI 55-1.   There is an

22   Attachment A and Attachment B.   Which one is Biogen's?   I

23   recognize your preference I not enter final judgment, but if

24   I choose to enter final judgment, which one of these two are

25   you asking me to enter?

1          MS. MASUROVSKY:  We had Exhibit B was the

2     version with our proposed changes.

3          THE COURT:  Okay.  Help me understand why I

4     should include the word "asserted" in paragraph 1.

5          MS. MASUROVSKY:  We had exchanged some initial

6     infringement contentions and then identified certain claims,

7     and that was why we put that in there.

8          THE COURT:  Do you disagree that defendant is

9     the prevailing party?

10          MS. MASUROVSKY:  We don't.  My understanding,

11     we, our understanding is that Banner has asked the Court to

12     defer rulings on the issue of fees, to defer them moving for

13     fees.  And I guess we had considered those two together and

14     had suggested them, that those come out.

15          THE COURT:  All right.  Well, we'll come back to

16     you.

17          But Ms. Masurovsky has had a chance to say quite

18     a bit and answer my questions.  Mr. Musgrove, do you have

19     anything you want to say at this point?

20          MR. MUSGROVE:  Your Honor, just a couple points,

21     and I'm happy to address any other questions that you asked

22     of Ms. Masurovsky as well.

23          But with regard to the proposed final judgment,

24     we did attach Exhibit A.  We would propose that.  As we

25     said, the "asserted" doesn't make a lot of difference here

1    because claim 1 was held not infringed and is well known in

2    the claim.  We had asked them which claims weren't asserted,

3    and we did not, before we submitted we did not get a

4    response.  So this is the first time I'm hearing about the

5    contentions issue.

6         With regard to the third issue, obviously, part

7    of that was just to defer costs until this resolves itself.

8    Obviously, if the case were reversed or remanded by the

9    Federal Circuit, ultimately any final judgment at that point

10   would be entered in any event.  So we do believe ours is the

11   prompt form.

12        One point I would address on the injunction

13   issue with regard to this limited window, and just address

14   Your Honor's question on that.

15        She obviously -- or what has been said is that

16   it would hurt them because they expected that they would

17   have this window.  Of course, the flip side of that

18   typically would be balance of harm cases.

19        Every day that we're not allowed to compete with

20   them -- and these are not exchangeable products, and again

21   we're not talking about the Tecfidera product, which was the

22   basis of this litigation at all, we're talking about a third

23   product.

24        At that point, what you're allowing is you are

25   allowing them to establish themselves in the marketplace and

1    we're being held off and we've been held not to infringe.

2          So we believe you can look at that either way.

3    She has made -- or Biogen has made their case, but we

4    believe it is appropriate to look at it that we're being

5    held off.

6          With regard to the June 20, 2020 date, just so

7    Your Honor has in mind, there are, as I believe your Honor

8    knows, various generic cases.  One has been tried to -- one

9    has already been tried in Delaware, one will be tried soon,

10    and there is an IPR proceeding as well.

11          I believe in each of those cases, the generics

12    are off the market until June of 2020.  Perhaps Mylan in its

13    West Virginia case has already agreed to that.  But if those

14    generics were to launch, we obviously have a limited window.

15          Of course, that presumes the generics win, which

16    I'm sure Biogen does not believe will happen, but that is a

17    possibility.  So there is a window for us potentially both

18    on the front end with they're establishing their new product

19    which is not covered by this patent and potentially on the

20    back end with generic competition.

21          So we do have a limited time frame in which --

22    potentially in which to launch this product, so we do

23    believe that favors us as well.

24          THE COURT:  Okay.  Thank you very much.

25          Ms. Masurovsky, is there anything you want to

```
 1    add?

 2                MS. MASUROVSKY:  Your Honor, just again if we

 3    may have the Court's guidance if we move for expedited

 4    relief from this Court, a temporary injunction or for the

 5    injunction pursuant to Rule 62(d) pending appeal.  I may

 6    have not understood correctly, but is the Court's guidance

 7    that we should file motion papers or that we should make --

 8    or that I should be clear we're making the motion orally

 9    now?

10                THE COURT:  Right.  Well, I was about to turn to

11    that.  I don't need briefing.  I don't want briefing.  I'm

12    not asking you to file briefing.

13                I do have some things I am going to need help

14    on, and I will direct you to that momentarily if I stick to

15    what remains my inclination.

16                I understand that you have orally made a motion.

17    I understand that the defendant has orally opposed it.

18                I think in context, you all, on this call, are

19    being given a full and fair opportunity to be heard; and I'm

20    listening to you and I'm answering, I'm getting my questions

21    answered.

22                But now is the time.  So don't hold anything back

23    if you think you have got more that might be pertinent,

24    particularly to the factors that I have to consider on whether

25    to enjoin the defendant upon entry of final judgment.  Now is
```

1      the opportunity to be heard on that.

2                  MR. MUSGROVE:  Your Honor, this is Mr. Musgrove

3      again.

4                  The only thing I would revisit with Your Honor,

5      if you are inclined to stick with your inclination that we

6      have said in the order and have a limited period of time

7      where we're enjoined so that Biogen could approach the

8      Federal Circuit and potentially seek relief there, that we

9      would just like to be heard and perhaps have the opportunity

10     to work out the form of that order.

11                 Obviously, as I already mentioned, if we do that

12     on some kind of expedited time frame, especially given the

13     hour of the day on Friday and Monday being a holiday, we

14     could potentially work that out subject to your Honor giving

15     us some guidance with Biogen and submit something to Your

16     Honor, if your Honor is inclined to do.

17                 THE COURT:  Yes.  Let me, in these unusual and

18     expedited circumstances and late in the day Friday, and I

19     don't know about all of you but I have been in trial all

20     day, I will answer questions, so that might make things a

21     little more efficient here.

22                 What I'm thinking of doing is giving you all

23     until Monday or Tuesday to see if you can negotiate the

24     language for the final judgment and the language for an

25     Injunction Order that will enjoin the defendants for 14 days

1    and for no more than 14 days from launching or selling their

2    product, assuming you received final approval in that time

3    frame.

4              But the further assistance I would need from you

5    would be you all putting your heads together and seeing if

6    you can possibly and hopefully agree on the language for the

7    final judgment and for the Injunction Order.  And if you

8    can't, giving me very short like three page letter briefs

9    telling me what the remaining likely narrow disputes are and

10   why I should adopt your language as opposed to the other side.

11             So that is not yet an order.  I do want to make

12   sure you all had a full and fair opportunity to tell me

13   whatever you want to tell me, but at the moment that is

14   where I'm leaning.

15             So with that, back to you, Mr. Musgrove.  What

16   do you want to say?

17             MR. MUSGROVE:  Your Honor, I think on the

18   merits, we already said what we would like to say.

19             I think two things that perhaps we could use

20   your guidance on since you said you were willing to answer

21   questions:

22             One would be the issue of a security for us.  I

23   raise an issue, obviously bond or something.  And I don't

24   think any of us wants to get into, including myself, the

25   exact issues here, but Biogen had mentioned in their letter

1    the possibility of an undertaking which obviously is a form

2    of security but it is not tabbed or bounded in the same way

3    as a specific bond.

4             We would be okay with that form of security.  I

5    have spoken with my client about that, if Biogen would be

6    willing to get it.  Maybe we should have a discussion with

7    them first, but I did want to raise that with Your Honor to

8    see if Your Honor had any views on that.

9             And then -- well, I will stop there, and then I

10    had one other question.

11             THE COURT:  Okay.  Well, here is a question back

12    to you.  Just articulate succinctly the risk that that

13    security would be covering you against.

14             MR. MUSGROVE:  So, well, I think some of this

15    depends obviously on the injunction itself, the language,

16    but that would be the possibility if, during the time period

17    between now and 14 days, or if it were Tuesday plus 14 days,

18    that we would have the capability to go to market.

19             But to be clear, with the method of use patent

20    as well, even if we could not necessarily technically go

21    to market with a product, you can still potentially approve

22    damages or losses, and in that time period obviously you can

23    make offers for sale, you can make contracts even if you

24    can't introduce actual products into the commercial

25    distribution string.  So there are ways to have damages and

1    have concerns.  And so that would be our concern is, as we

2    expressed, all of us can't answer the question of when the

3    FDA will approve this and what we would be able to do at

4    that time.  That none of us have possession of that

5    information.  The FDA does.  So that would be our concern,

6    Your Honor.

7              THE COURT:  Okay.  So my inclination, I'm going

8    to hear from the plaintiffs presumably on why they think

9    they shouldn't have to provide any security, but that issue,

10   assuming you don't agree on the call, is one that I'm

11   inclined to tell you to keep negotiating on.  And if you

12   can't resolve it, you will give me in a succinct way your

13   view in probably a three page letter that I would consider

14   before I enter the final judgment and the injunction order.

15             I think you had a second question; is that

16   right?

17             MR. MUSGROVE:  Yes, Your Honor.  I did.  The

18   second question is -- and perhaps this is something better

19   left for negotiations, but you mentioned no longer than

20   14 days, which obviously gives time to have some expedited

21   injunction proceedings at the Federal Circuit.

22             My question would be, should the order be drafted

23   in a way where it is no more than 14 days but obviously can

24   terminate earlier if the Federal Circuit were to decide prior

25   to those 14 days?

1

2          THE COURT:  We'll hear from Ms. Masurovsky, but

3   consistent with what I'm envisioning, it would -- if I go

4   forward with this, it would seem that the answer is "yes"

5   because I'm principally leaning towards this 14 day period

6   in an effort to give the Federal Circuit an opportunity,

7   without being too rushed, to consider a request for relief

8   since I'm told one is forthcoming from Biogen.

9          Anything else, Mr. Musgrove, at this point?

10         MR. MUSGROVE:  Your Honor, it just occurred to

11  me.  One other thing, and this is not a question, but given

12  that Your Honor hasn't yet entered an order, Ms. Masurovsky

13  did state that there is a conflict in the law here, but it

14  is, as Your Honor has already said, that only the Federal

15  Circuit can resolve.  We don't believe that is correct for

16  the reasons you stated in your order.  So I would address

17  that.

18         And specifically because everybody acknowledged

19  that the earlier case controls, and here the earlier case

20  supports us.  So we would state that.

21         The other thing I would say is I don't think the

22  appropriate standard of law is a reasonable likelihood of

23  success.  I think it is stronger.  But having said that, I

24  will now stop on any merits issues.

25         THE COURT:  Okay.  Thank you.

1              Let me turn back to the plaintiffs,

2  Ms. Masurovsky, Is there anything else you want to say or

3  ask?

4              MS. MASUROVSKY:  No, Your Honor.  Thank you.

5              THE COURT:  Okay.  Well, then this has been

6  very helpful, and we are going to proceed consistent with

7  what I have been inclined to do frankly since getting my

8  opinion out.  Certainly since reviewing the joint status

9  report, since indicating to you my inclinations in the order

10  setting this call, since repeating it at the beginning of

11  this call, and now having had the benefit of the chance to

12  talk these issues through with you, it still seems to me

13  that the defendants have won this case in front of me.

14              It was a challenging issue that was before me.

15  And it took me much longer than I had anticipated to get to

16  it, and the plaintiffs have been presumably enjoying the

17  benefits of a market that the defendant was kept from given

18  in large part due to my delay in getting this difficult

19  issue resolved.

20              At a high level then, thinking about the overall

21  equities here, my work should be basically done.  My case

22  should not be stopping the defendants from getting to

23  market.  The FDA may or may not give final approval.  That

24  is not for any of us to decide.

25              But there is another court.  Obviously, the

Federal Circuit.  They may wish to step in and review this
at the plaintiff's request.  They may wish to do it quickly.
They may wish to slow down the defendant.

I want to create an opportunity both for the
plaintiff to pursue those avenues and for the Federal
Circuit not to have to figure out what, if anything, they
want to do in just a matter of hours or days.  And I think
it is fair for me to consider all of that.

To be more precise, with the test that applies
in situations like this, if I consider whether the plaintiff
has shown a reasonable or substantial likelihood of success
on appeal, the answer is "no" regardless of how you phrase
the test, but I do think it is fair to consider in the
analysis how difficult the decision on the motion was and
the arguably conflicting authorities that the parties and
the Court had to deal with.  So I think the plaintiff
doesn't meet their burden but it's not as if their showing
on this factor is anything like a nullity.

In terms of irreparable harm, I don't think the
plaintiffs have come forward with very much.  It seems
largely to relate to a different product that they're now in
the process of launching, not the product that this case was
about, not the product that the patent or the arguable patent
extension was based on.  And to the extent plaintiffs were
expecting to enjoy a market that was not one in which the

defendant was competing with them as they invested heavily

in launching this new drug, that may not have been a very

reasonable assumption given I think the at least superficial

strength they could have seen in the motion, from reading the

motion, from reading the brief, from attending the oral

argument, and from just simply understanding the nature of the

dispute here.  So I think that also further undermines the

purported showing of irreparable harm.

On balance of harms, I'm going to call that is a

draw.  I do see scenarios under which either side could be

harmed here:  The plaintiffs, because maybe I was wrong and

they should have an opportunity to introduce this new

product without competition for the defendants.  The

defendants harmed because they have arguably a very narrow

window in which they could launch their product without

facing, for instance, other generic competition.  So I will

call that a draw.

The reason I'm granting the two weeks of an

injunction really turns on the public interest factor.  I

think principally the public interest here is to give the

plaintiffs a small or short period of time in which to see

if they can get the higher court involved and in a way that

could lead to a change in outcome from the one that this

court thought was the right thing to do.  Given how much

time has passed since the case was filed, since the motion

was filed, since the motion was argued, I think adding two

more weeks of keeping the defendants off the market to

give the Federal Circuit the opportunity to do whatever

they wish to do is very strongly in the public interest,

even recognizing that there are other public interest

factors such as the interest in full and fair competition,

particularly from a product that I have found cannot be

kept off the market due to a patent that I have found has

expired.

So for all those reasons, the way we're going to

proceed is I will enter final judgment but not sooner than

Tuesday.  And at the same time as I enter final judgment, I

will enter an injunction order that enjoins the defendants

at least from making sales for 14 days from the date that I

enter the injunction.

The specific language of the final judgment

and the specific language of the injunction order are still

subject to first the parties' negotiations; and I do hereby

order that you meet and confer absolutely as soon as

possible to begin those negotiations, and subject to further

submissions from the parties.

What are those submissions?

By 6:00 p.m. on Monday -- and I recognize it

is a federal holiday, but by 6:00 p.m. on Monday, I need a

proposed final judgment, a final judgment order and a

proposed injunction order.  Ideally I'll get one version of each, and you will tell me you agreed on all that.

Failing that, I need clean copies of your competing proposals as well as a third version that shows me where the differences are.  And in the event that there are differences on either order, both sides can simultaneously file by 6:00 p.m. on Monday letters, single-spaced letters of up to three pages that address those differences and why you propose what you are proposing.

On the security point, I am inclined to grant some form of security.  I will leave that topic further and particularly specifically what the security should look like to the parties, but typically when there is an injunction like this, some security would be provided, and I'm not seeing a reason why I shouldn't follow that typical practice here.

So that is my decision.  Please tell me what else you want to talk about.  Any questions or anything further on that, Ms. Masurovsky?

MS. MASUROVSKY:  Nothing from us, Your Honor.  Thank you.

THE COURT:  Okay.  And Mr. Musgrove?

MR. MUSGROVE:  Nothing from us substantively, Your Honor.  I will commit to the Court and to plaintiffs to drafting up the initial draft to send over to them and start

1    the meet and confer.

2                    THE COURT:  Okay.  Thank you for that.  We'll

3    look for your submissions on Monday.  Thank you all for

4    your time.  I do hope you manage to enjoy the weekend

5    notwithstanding what you are working on for me.

6                    Take care.  Good-bye.

7                    (Telephone conference ends at 5:18 p.m.)

8

9          I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

10

11                              /s/ Brian P. Gaffigan
                             Official Court Reporter
12                             U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25

# GZJ KDKV D

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -
        BIOGEN INTERNATIONAL GmbH,
 4                                        :      CIVIL ACTION
                  Plaintiff,             :
 5      v                                 :
                                          :
 6      BANNER LIFE SCIENCES LLC,         :
                                          :      NO. 18-2054-LPS
 7                Defendant.
                                - - -
 8
                            Wilmington, Delaware
 9                        Friday, January 17, 2020
                            Telephone Conference
10
                                - - -
11
        BEFORE:          HONORABLE LEONARD P. STARK, Chief Judge
12
                                - - -
13      APPEARANCES:

14
                    ASHBY & GEDDES
15                  BY:  STEVEN J. BALICK, ESQ.

16                      and

17                  FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
                    BY:  PAUL W. BROWNING, ESQ., and
18                       LAURA P. MASUROVSKY, ESQ.
                         (Washington, District of Columbia)
19
                            Counsel for Plaintiff
20

21                  SHAW KELLER, LLP
                    BY:  KAREN E. KELLER, ESQ.
22
                        and
23

24
                                    Brian P. Gaffigan
25                                  Official Court Reporter
```

```
 1    APPEARANCES:   (Continued)

 2
                      PARKER POE, LLP
 3                    BY:  C. KYLE MUSGROVE, ESQ.
                           (Charlotte, North Carolina)
 4
                           and
 5
                      PARKER POE, LLP
 6                    BY:  ELIZABETH M. CROMPTON, ESQ.
                           (Washington, District of Columbia)
 7
                              Counsel for Defendant
 8

 9

10

11

12

13                              - oOo -

14                    P R O C E E D I N G S

15              (REPORTER'S NOTE:  The following telephone

16    conference was held in chambers, beginning at 4:31 p.m.)

17              THE COURT:  Good afternoon, counsel.  This is

18    Judge Stark.  Who is there, please?

19              MR. BALICK:  Your Honor good afternoon.  Steven

20    Balick for the plaintiff, Biogen along with co-counsel from

21    the Finnegan Henderson firm, Laura Masurovsky and Paul

22    Browning.

23              THE COURT:  Okay.

24              MS. MASUROVSKY:  Good afternoon, Your Honor.

25              THE COURT:  Good afternoon.
```

1                    MS. KELLER:  And good afternoon, Your Honor.

2      Karen Keller from Shaw Keller on behalf of -- Pharma; and

3      with us today is Paul --

4                    THE COURT:  Ms. Keller, you are coming in and

5      out.  I really haven't heard much.

6                    MS. KELLER:  Okay.  I'm sorry.  Hold on.

7                    Sorry, Your Honor.

8                    THE COURT:  Okay.

9                    MS. KELLER:  It's Karen Keller; and with me on

10     the line is Kyle Musgrove and Elizabeth Crompton now at

11     Parker Poe; and also on the line is Claudia Harrington from

12     Banner.

13                    THE COURT:  Okay.  Thank you.  I have my court

14     reporter here with me; and for the record, it is our case of

15     Biogen International, GmbH versus Banner Life Sciences, LLC,

16     Civil Action No. 18-2054-LPS.

17                    I set this is a time to talk to you all about

18     how to proceed.  As I indicated in my order setting the

19     call, I have in front of me proposed final judgment orders.

20     My inclination is that I will enter final judgment and that

21     my work on this case is basically done, but that if the

22     defendants are not willing to say that they don't intend

23     to launch their product, I am open to the possibility of

24     trying to enjoin that launch for a couple of weeks if the

25     plaintiffs wish to pursue their opportunities to seek relief

1    in the Court of Appeals.

2            That is my thinking going into this but thought

3    it would be a good idea to talk to you all before I move

4    forward.  So with that, why don't I hear from the plaintiff

5    first.

6            MS. MASUROVSKY:  Thank you, Your Honor.  We do

7    appreciate the opportunity to discuss the best path forward.

8            As we indicated in our joint status report, we

9    do wish to ask the Court by motion to enjoin the defendants

10   pending appeal pursuant to the Federal Rule of Civil

11   Procedure 62(d) or, in the alternative, for a temporary or

12   preliminary injunction sufficient to allow us time to seek

13   injunctive relief from the Federal Circuit.

14           In order to seek relief from the Federal

15   Circuit, as the Court may know, under Federal Rules of

16   Appellate Procedure 8 and Federal Circuit Rule 8, we need

17   to first make a motion before the District Court and have

18   the Court, if it is not going to give us an injunction

19   pending appeal, to deny that motion.

20           We believe we have a compelling case for an

21   injunction pending appeal due to the difficult and arguably

22   conflicting legal issues that only the Federal Circuit can

23   resolve and the fact that the balance of harm tips in our

24   favor.  We are prepared to make that motion either by filing

25   papers which we have ready with a brief and be prepared to

1    submit to any kind of expedited briefing schedule or hearing

2    that the Court would like, or we are prepared to make our

3    motion orally, if the Court would entertain it orally on

4    this call, so that we can, if the Court's inclination is to

5    give us the 14 days in order to seek relief from the Federal

6    Circuit, to do so after getting a motion before the District

7    Court to meet the requirements of Appellate Rule 8.

8              We also would like to note, as we said in our

9    joint status report, that entry of final judgment does allow

10   the defendant to immediately obtain approval from the FDA

11   and, upon approval, to immediately launch if they were

12   intending to launch and therefore a traditional stay is not

13   sufficient to preclude that from happening and therefore

14   that is the reason we would be moving for an injunction

15   pending appeal or temporary injunction.

16             THE COURT:  Right.

17             MS. MASUROVSKY:  The last point --

18             THE COURT:  Yes, go ahead.

19             MS. MASUROVSKY:  Just since we are on a Friday,

20   at the close of business Friday, and Monday is a federal

21   holiday, it has come to our attention that if the Court is

22   inclined to give us the 14 days temporary relief that we

23   would seek in order to go before the Federal Circuit, we

24   could not get the Federal Circuit to start considering our

25   request for relief any earlier than Tuesday, and we would

1  ask that if the Court is willing to entertain our motion and

2  to allow us time to seek relief from the Federal Circuit

3  that nothing would be entered before Tuesday.

4  THE COURT:  All right.  I would assume, but --

5  well, let me, two related questions.

6  Have you been told anything further from the

7  defendants about whether they are planning to launch if I

8  enter final judgment?  And,

9  Related to that, my assumption is that even if I

10  enter final judgment at the end of this call, I assume the

11  FDA is closed until Tuesday, so I would assume they couldn't

12  get their final approval before Tuesday, but if that is

13  incorrect, I would like to know.

14  So to you, Ms. Masurovsky, any answers to those?

15  MS. MASUROVSKY:  I can answer that we have had

16  no more information than we have put in our joint status

17  report, which is we asked are they intending to go on the

18  market before June 20th, 2020?  And, if so, when?  And we

19  have had no response to that.

20  It is my understanding but not with any inside

21  knowledge, and I would defer to Banner itself, but the FDA

22  is closed on Monday and therefore they cannot obtain final

23  approval on Monday as well, but could first thing Tuesday

24  morning.  I assume that is the case but I don't have

25  firsthand knowledge of that.

|  |  |
|---|---|
| 1 | THE COURT:  Okay.  Thank you.  We'll come back |
| 2 | to you, but I want to first have an understanding of the |
| 3 | defendant's position as to where we are at this point.  So |
| 4 | someone for Banner, please. |
| 5 | MR. MUSGROVE:  Yes, Your Honor.  This is Kyle |
| 6 | Musgrove. |
| 7 | With regard to the final judgment, as we stated |
| 8 | before, we believe that it is appropriate.  I understand |
| 9 | here that the concern seems not so much to be from Biogen |
| 10 | itself that final judgment be entered but more the launch |
| 11 | issue. |
| 12 | For the record, and I know what Your Honor said |
| 13 | and how you are inclined at this point.  We don't believe |
| 14 | an injunction would be proper for a few reasons, and I will |
| 15 | just be very brief about this. |
| 16 | One is obviously a likelihood of success, a |
| 17 | strong likelihood I believe is the appropriate standard for |
| 18 | an injunction here, and we don't believe that is appropriate |
| 19 | given Your Honor's careful consideration of the issues and |
| 20 | the opinion that was offered. |
| 21 | Certainly, the public interest here obviously |
| 22 | favors competition where there is no infringement of a patent; |
| 23 | so we believe the public interest favors us, especially when |
| 24 | we've been delayed by the 30-month injunction in any event. |
| 25 | Then, lastly, with regard to the irreparable |

1    harm, I will say Biogen's counsel has said something about

2    that in the status report, but Biogen it has said nothing.

3    Biogen has been to the JP Morgan Health Conference, has said

4    nothing about this.  They haven't posted anything to the

5    SEC, they posted nothing on their website.  So as far as

6    this being some big event to them, there isn't any evidence

7    of that.

8              So we don't believe an injunction is appropriate,

9    but if Your Honor is inclined that way, we would like to at

10   least be heard on the scope of the injunction.

11             THE COURT:  All right.  So we're using the word

12   "injunction."  When I say that I'm inclined to enter final

13   judgment but then create a two week window essentially for

14   the plaintiff to see if the Federal Circuit wants to take

15   this up, you are saying, Mr. Musgrove, you oppose that and

16   you think the three factors you have identified disfavor

17   even that two week relief.  Is that what you are saying?

18             MR. MUSGROVE:  I would say that, Your Honor.  At

19   least as far as what we would call an injunction, yes.  And

20   so my client at this time, going to your earlier question,

21   was not inclined to agree to stay off the market itself.

22             THE COURT:  Right.  I guess, so, for me, the

23   situation is it just -- the plaintiff has appellate rights,

24   and I'm concerned about creating a complete emergency

25   arguably at the Federal Circuit when it took me admittedly

1     much longer to get to this opinion than I had hoped; and

2     I'm thinking another two weeks, while I can understand why

3     your client would be disappointed in that, it's only two

4     more weeks and then you are done with me, and unless the

5     Federal Circuit gets involved, then my injunction would

6     expire.

7             But that's my thinking.  I feel that those are

8     the type of concerns that are fair for me to consider in

9     connection with the injunction test.  But, Mr. Musgrove, if

10    I'm overlooking something or you want to add to what you

11    have said, I'm happy to hear it.

12            MR. MUSGROVE:  No.  Your Honor, I don't believe

13    I would add anything to what I said other than what I would

14    say is this:  To the extent you are inclined to ask for our

15    client to stay off the market or order it to do so, we would

16    ask obviously that the final judgment be entered, but we

17    would like to be heard on the scope of that injunction

18    particularly given that the patent here is a method of

19    treatment patent and certainly should not cover a number of

20    activities we can do in the interim, even if we were to be

21    enjoined from actually launching the product into

22    distribution channels if we were able to do so.

23            Obviously, we don't have FDA approval at this

24    point, so that could -- we're all speculating, that could

25    take some time, but we would want to be heard on that issue,

1    Your Honor, even if you were to enjoin us as well, or to

2    enter an order, however you would prefer to state it, that

3    we would refrain from being on the market.

4            THE COURT:  All right.  Can you confirm to your

5    knowledge that even if I entered final judgment today, that

6    you could not get final approval before next Tuesday?

7            MR. MUSGROVE:  Your Honor, I have to admit I do

8    not know that.  I would assume that we certainly would agree

9    as part of, if you were to enter an order more generally

10   holding us off the market, that we certainly would not, in

11   the interim -- let's say if we needed to negotiate the

12   specific provisions of that, to follow instructions from

13   Your Honor, that we would certainly not launch during the

14   pendency of putting something together to put in front of

15   Your Honor.  We are not in the situation to do that today.

16           THE COURT:  All right.  I think I will be coming

17   back to you as well, Mr. Musgrove.

18           But Ms. Masurovsky, is there anything you want

19   to respond to that you heard?

20           MS. MASUROVSKY:  Yes.  We do think, Your Honor,

21   that Rule 62(d) and 65(b) are exactly for this type of

22   scenario, preservation of the status quo where there is a

23   difficult or apparent conflict of the controlling authority

24   and the merits issues are substantial and difficult and make

25   them a fair ground for litigation.

1          It is a reasonable likelihood of success on the

2     merits, and particularly where there are close or difficult

3     questions of law and apparent conflict in the law under the

4     *Standard Havens* case, for example, which is 897 F2d 511

5     (1990), or in the D.C. Circuit, the *Washington Metro Area*

6     *Transit v Holiday Tours* case, 559 F2d 841.  These are

7     exactly the kinds of cases where the Court provides the kind

8     of relief.

9          We do think the balance of harm and the public

10    interest very much tips in our favor.  We have been on the

11    market.  Banner is not yet on the market.  We have invested

12    heavily in a new product that is a more tolerable type of

13    fumarate.  We brought that to market very recently; and

14    we are very concerned that we will suffer irreparable and

15    immediate harm if Banner, which apparently has conducted

16    testing in healthy volunteers but hasn't released the

17    results, if those tests were bad and the results were bad

18    and there is confusion between their product and our

19    product.  It would have immediate and significant effects

20    on our being able to market our new product and get it out

21    to doctors and patients with the right information.

22         So there are many different ways in which we

23    believe we could demonstrate immediate and irreparable harm

24    whereas Banner's harm, especially if it's another two weeks

25    that it would not be on the market, is more quantifiable.

1    So we do think we meet all of the four factors that would

2    support an injunction, particularly if the Court is going to

3    consider a temporary injunction so we can seek relief from

4    the Federal Circuit.

5              We are concerned if the Court enters final

6    judgment and there is any lag between entering final

7    judgment and the entry of any kind of enjoining of Banner,

8    that that does create a window in which they could sell

9    their product.

10             So we would formally move the Court on a

11   temporary basis pursuant to Rule 65 to give us time for

12   the Court to consider, if the Court is going to consider

13   briefing and responses, to get that before the Court so that

14   the status quo is preserved while the Court considers this

15   request.

16             THE COURT:  Do you dispute that come June of

17   2020, the defendants are going to be on the market, no

18   matter what?

19             MS. MASUROVSKY:  Well, we actually don't know.

20   Again, the public information is that they had a trial that

21   was completed in October of last year, but they have

22   released no results, no publication, no press releases; and

23   this suggests to us that maybe those results were not good,

24   and that maybe they really actually can't launch and/or

25   won't launch because compared to our product, Tecfidera,

1    they did the head-to-head study that they said they were

2    going to do.  Maybe it didn't come out so well, and that, of

3    course, would have a negative impact on us, but maybe they

4    are not going to release it to the public because of that.

5    We just don't know.  We actually just don't know.

6                    THE COURT:  Right.  So if they don't launch and

7    can't get approval to launch, how is your client harmed?

8                    MS. MASUROVSKY:  If they do not launch, which is

9    why we've asked, obviously we're in a "the elephant in the

10   room," so to speak.  We have a different situation.

11                   But we have asked, and they won't tell us, so

12   we have to obviously protect against the possibility that

13   they're just not telling us because they want to surprise us

14   or whatever.

15                   We are exposed to and seeking the protection of

16   the Court for this harm that is otherwise what would occur.

17   They have tentative approval.  As soon as the Court enters

18   final judgment, they are free to present that to the FDA.

19                   The FDA then has no barriers to, as far as we

20   know, to granting them final approval; and the minute they

21   get that final approval, they are free, as far as we know,

22   to sell their product.  And,

23                   Given what we submit is the difficult and close

24   and arguably conflicting precedent on which the decision

25   was based, and the balance of harm here, we think that it is

1     appropriate to enjoin Banner at least at a minimum until we

2     can get relief from the Federal Circuit pending appeal; and

3     we submit Your Honor would consider our papers, and we are

4     making a compelling case for that to be during the pendency

5     of the appeal or until June 20, whichever comes sooner.

6               THE COURT:  Right.  I was trying to focus on the

7     June 20th date because it would seem to me it is relevant

8     at least as to the issue of the balance of harms.  Doesn't

9     defendant have a window that exists only between now and at

10    the latest June 20th, 2020 to market their drug without

11    potential competition?

12              MS. MASUROVSKY:  Actually, that is the window

13    for us that we are pointing to for why we have the

14    irreparable harm to the product we just launched, because

15    we had expected to have the first mover benefits available

16    to us through June 20, 2020 whereas Banner is to be on the

17    market with its product as of June 20, 2020 regardless of

18    the decision and the activities in the litigation.

19              So actually we think the balance of harm,

20    because of the June 20, 2020 date, is squarely tipping in

21    our favor because we're the ones that had been counting on

22    the lack of competition in the fumarate area and invested

23    heavily in a few products,  ███████████████  , to bring

24    this new product to the market with the understanding

25    based on the expectation that we would have our protection

1    particulars through June 20, 2020.  That is what was at risk

2    for us and we think subject to drastic and immediate harm if

3    Banner's product is launched prematurely before that date.

4         Yes, the window for which we are asking an

5    injunction is at most five months pending appeal.

6         THE COURT:  All right.  On the proposed final

7    judgments, because so far I'm still inclined to enter final

8    judgment, it's unclear to me other than the arguments about

9    the potential launch.  Do you have other arguments against

10   why I should wait to enter final judgment?  And do you have

11   objections to the specific form of final judgment that was

12   attached to DI 55?

13        MS. MASUROVSKY:  Your Honor, we would ask that

14   the Court again, if it is going to enter a final judgment,

15   enter it for the first next business day on Tuesday to give

16   us time to seek immediate relief.

17        We would also ask the Court to enter -- if it

18   is going to enter final judgment, to enter it in conjunction

19   with an injunction against Banner sales until we have the

20   Court of Appeals ruling.  An opportunity to get to the Court

21   of Appeals on our request for relief pending appeal.

22        Again, while they haven't told us they are going

23   to launch, they also have not said anything, and in response

24   to Your Honor's questions, we didn't hear anything that

25   suggested they are not going to launch.  We're still in the

1       same boat seeking the Court's injunction either pending

2       appeal or on a temporary basis to consider our arguments

3       so we don't have irreparable harm in the meantime, which

4       we believe would be immediate and drastic, and it is not

5       balanced because we are already on the market with a new

6       product and in a market that is very much in flux and which

7       could be very much harmed drastically by their launch

8       whereas again we're just asking in terms of them if they're

9       not already on the market being deferred for a particular

10      time which is much more easily quantifiable.

11              THE COURT:  What about the contention that your

12      claims are method of treatment claims?  The injunction you

13      want, would it extend to all activities, including sales, or

14      would it only be to prevent use and actual practice of the

15      method of treatment over the two weeks?

16              MS. MASUROVSKY:  We would be seeking injunction

17      against them selling their product.

18              THE COURT:  And on what basis?

19              MS. MASUROVSKY:  That it is the sale of the

20      product that has been covered by the -- it is the sale of

21      the product that will lead to the use of the product, and

22      that is the sole purpose of selling the product is to have

23      it be used.  There is no other purpose for selling the

24      product other than to have it used.

25              THE COURT:  Is there not potentially a point in

1     the distribution process between the defendant and a patient

2     that the injunction could apply to?

3          MS. MASUROVSKY:  So typically in these kinds

4     of pharmaceutical injunctions, even when it is a method of

5     use claim, it is the seller's sale that is enjoined because

6     it is, I guess from a practical standpoint, the most

7     practical place of which to have it be enjoined; and also

8     it is the party that is before the Court and it is not the

9     distributors or the pharmacist or the other many other

10    complicated downstream parties and corporations who might be

11    involved in clinical using it and certainly not the patient.

12          So as a sort of practical and legal matter, the

13    Court has jurisdiction over Banner, and it is the most

14    appropriate, in our view, way to handle a short -- and in

15    the way courts have done these injunctions in other cases

16    is to enjoin the seller even if the claims are method of use

17    claims because it is a natural consequence on the party

18    before the Court over whom the Court has the most immediate

19    jurisdiction.

20          THE COURT:  Okay.  On the proposed final

21    judgment, I have in front of me DI 55-1.  There is an

22    Attachment A and Attachment B.  Which one is Biogen's?  I

23    recognize your preference I not enter final judgment, but if

24    I choose to enter final judgment, which one of these two are

25    you asking me to enter?

1              **MS. MASUROVSKY:  We had Exhibit B was the**

2      **version with our proposed changes.**

3              **THE COURT:  Okay.  Help me understand why I**

4      **should include the word "asserted" in paragraph 1.**

5              **MS. MASUROVSKY:  We had exchanged some initial**

6      **infringement contentions and then identified certain claims,**

7      **and that was why we put that in there.**

8              **THE COURT:  Do you disagree that defendant is**

9      **the prevailing party?**

10             **MS. MASUROVSKY:  We don't.  My understanding,**

11     **we, our understanding is that Banner has asked the Court to**

12     **defer rulings on the issue of fees, to defer them moving for**

13     **fees.  And I guess we had considered those two together and**

14     **had suggested them, that those come out.**

15             **THE COURT:  All right.  Well, we'll come back to**

16     **you.**

17             **But Ms. Masurovsky has had a chance to say quite**

18     **a bit and answer my questions.  Mr. Musgrove, do you have**

19     **anything you want to say at this point?**

20             **MR. MUSGROVE:  Your Honor, just a couple points,**

21     **and I'm happy to address any other questions that you asked**

22     **of Ms. Masurovsky as well.**

23             **But with regard to the proposed final judgment,**

24     **we did attach Exhibit A.  We would propose that.  As we**

25     **said, the "asserted" doesn't make a lot of difference here**

because claim 1 was held not infringed and is well known in

the claim.  We had asked them which claims weren't asserted,

and we did not, before we submitted we did not get a

response.  So this is the first time I'm hearing about the

contentions issue.

With regard to the third issue, obviously, part

of that was just to defer costs until this resolves itself.

Obviously, if the case were reversed or remanded by the

Federal Circuit, ultimately any final judgment at that point

would be entered in any event.  So we do believe ours is the

prompt form.

One point I would address on the injunction

issue with regard to this limited window, and just address

Your Honor's question on that.

She obviously -- or what has been said is that

it would hurt them because they expected that they would

have this window.  Of course, the flip side of that

typically would be balance of harm cases.

Every day that we're not allowed to compete with

them -- and these are not exchangeable products, and again

we're not talking about the Tecfidera product, which was the

basis of this litigation at all, we're talking about a third

product.

At that point, what you're allowing is you are

allowing them to establish themselves in the marketplace and

1    we're being held off and we've been held not to infringe.

2              So we believe you can look at that either way.

3    She has made -- or Biogen has made their case, but we

4    believe it is appropriate to look at it that we're being

5    held off.

6              With regard to the June 20, 2020 date, just so

7    Your Honor has in mind, there are, as I believe your Honor

8    knows, various generic cases.  One has been tried to -- one

9    has already been tried in Delaware, one will be tried soon,

10   and there is an IPR proceeding as well.

11             I believe in each of those cases, the generics

12   are off the market until June of 2020.  Perhaps Mylan in its

13   West Virginia case has already agreed to that.  But if those

14   generics were to launch, we obviously have a limited window.

15             Of course, that presumes the generics win, which

16   I'm sure Biogen does not believe will happen, but that is a

17   possibility.  So there is a window for us potentially both

18   on the front end with they're establishing their new product

19   which is not covered by this patent and potentially on the

20   back end with generic competition.

21             So we do have a limited time frame in which --

22   potentially in which to launch this product, so we do

23   believe that favors us as well.

24             THE COURT:  Okay.  Thank you very much.

25             Ms. Masurovsky, is there anything you want to

1    add?

2                MS. MASUROVSKY:  Your Honor, just again if we

3    may have the Court's guidance if we move for expedited

4    relief from this Court, a temporary injunction or for the

5    injunction pursuant to Rule 62(d) pending appeal.  I may

6    have not understood correctly, but is the Court's guidance

7    that we should file motion papers or that we should make --

8    or that I should be clear we're making the motion orally

9    now?

10               THE COURT:  Right.  Well, I was about to turn to

11   that.  I don't need briefing.  I don't want briefing.  I'm

12   not asking you to file briefing.

13               I do have some things I am going to need help

14   on, and I will direct you to that momentarily if I stick to

15   what remains my inclination.

16               I understand that you have orally made a motion.

17   I understand that the defendant has orally opposed it.

18               I think in context, you all, on this call, are

19   being given a full and fair opportunity to be heard; and I'm

20   listening to you and I'm answering, I'm getting my questions

21   answered.

22               But now is the time.  So don't hold anything back

23   if you think you have got more that might be pertinent,

24   particularly to the factors that I have to consider on whether

25   to enjoin the defendant upon entry of final judgment.  Now is

1    the opportunity to be heard on that.

2              MR. MUSGROVE:  Your Honor, this is Mr. Musgrove

3    again.

4              The only thing I would revisit with Your Honor,

5    if you are inclined to stick with your inclination that we

6    have said in the order and have a limited period of time

7    where we're enjoined so that Biogen could approach the

8    Federal Circuit and potentially seek relief there, that we

9    would just like to be heard and perhaps have the opportunity

10   to work out the form of that order.

11             Obviously, as I already mentioned, if we do that

12   on some kind of expedited time frame, especially given the

13   hour of the day on Friday and Monday being a holiday, we

14   could potentially work that out subject to your Honor giving

15   us some guidance with Biogen and submit something to Your

16   Honor, if your Honor is inclined to do.

17             THE COURT:  Yes.  Let me, in these unusual and

18   expedited circumstances and late in the day Friday, and I

19   don't know about all of you but I have been in trial all

20   day, I will answer questions, so that might make things a

21   little more efficient here.

22             What I'm thinking of doing is giving you all

23   until Monday or Tuesday to see if you can negotiate the

24   language for the final judgment and the language for an

25   Injunction Order that will enjoin the defendants for 14 days

1    and for no more than 14 days from launching or selling their

2    product, assuming you received final approval in that time

3    frame.

4              But the further assistance I would need from you

5    would be you all putting your heads together and seeing if

6    you can possibly and hopefully agree on the language for the

7    final judgment and for the Injunction Order.  And if you

8    can't, giving me very short like three page letter briefs

9    telling me what the remaining likely narrow disputes are and

10   why I should adopt your language as opposed to the other side.

11             So that is not yet an order.  I do want to make

12   sure you all had a full and fair opportunity to tell me

13   whatever you want to tell me, but at the moment that is

14   where I'm leaning.

15             So with that, back to you, Mr. Musgrove.  What

16   do you want to say?

17             MR. MUSGROVE:  Your Honor, I think on the

18   merits, we already said what we would like to say.

19             I think two things that perhaps we could use

20   your guidance on since you said you were willing to answer

21   questions:

22             One would be the issue of a security for us.  I

23   raise an issue, obviously bond or something.  And I don't

24   think any of us wants to get into, including myself, the

25   exact issues here, but Biogen had mentioned in their letter

1    the possibility of an undertaking which obviously is a form

2    of security but it is not tabbed or bounded in the same way

3    as a specific bond.

4           We would be okay with that form of security.  I

5    have spoken with my client about that, if Biogen would be

6    willing to get it.  Maybe we should have a discussion with

7    them first, but I did want to raise that with Your Honor to

8    see if Your Honor had any views on that.

9           And then -- well, I will stop there, and then I

10   had one other question.

11          THE COURT:  Okay.  Well, here is a question back

12   to you.  Just articulate succinctly the risk that that

13   security would be covering you against.

14          MR. MUSGROVE:  So, well, I think some of this

15   depends obviously on the injunction itself, the language,

16   but that would be the possibility if, during the time period

17   between now and 14 days, or if it were Tuesday plus 14 days,

18   that we would have the capability to go to market.

19          But to be clear, with the method of use patent

20   as well, even if we could not necessarily technically go

21   to market with a product, you can still potentially approve

22   damages or losses, and in that time period obviously you can

23   make offers for sale, you can make contracts even if you

24   can't introduce actual products into the commercial

25   distribution string.  So there are ways to have damages and

1    have concerns.  And so that would be our concern is, as we

2    expressed, all of us can't answer the question of when the

3    FDA will approve this and what we would be able to do at

4    that time.  That none of us have possession of that

5    information.  The FDA does.  So that would be our concern,

6    Your Honor.

7            THE COURT:  Okay.  So my inclination, I'm going

8    to hear from the plaintiffs presumably on why they think

9    they shouldn't have to provide any security, but that issue,

10   assuming you don't agree on the call, is one that I'm

11   inclined to tell you to keep negotiating on.  And if you

12   can't resolve it, you will give me in a succinct way your

13   view in probably a three page letter that I would consider

14   before I enter the final judgment and the injunction order.

15           I think you had a second question; is that

16   right?

17           MR. MUSGROVE:  Yes, Your Honor.  I did.  The

18   second question is -- and perhaps this is something better

19   left for negotiations, but you mentioned no longer than

20   14 days, which obviously gives time to have some expedited

21   injunction proceedings at the Federal Circuit.

22           My question would be, should the order be drafted

23   in a way where it is no more than 14 days but obviously can

24   terminate earlier if the Federal Circuit were to decide prior

25   to those 14 days?

1

2          THE COURT:  We'll hear from Ms. Masurovsky, but

3    consistent with what I'm envisioning, it would -- if I go

4    forward with this, it would seem that the answer is "yes"

5    because I'm principally leaning towards this 14 day period

6    in an effort to give the Federal Circuit an opportunity,

7    without being too rushed, to consider a request for relief

8    since I'm told one is forthcoming from Biogen.

9          Anything else, Mr. Musgrove, at this point?

10          MR. MUSGROVE:  Your Honor, it just occurred to

11    me.  One other thing, and this is not a question, but given

12    that Your Honor hasn't yet entered an order, Ms. Masurovsky

13    did state that there is a conflict in the law here, but it

14    is, as Your Honor has already said, that only the Federal

15    Circuit can resolve.  We don't believe that is correct for

16    the reasons you stated in your order.  So I would address

17    that.

18          And specifically because everybody acknowledged

19    that the earlier case controls, and here the earlier case

20    supports us.  So we would state that.

21          The other thing I would say is I don't think the

22    appropriate standard of law is a reasonable likelihood of

23    success.  I think it is stronger.  But having said that, I

24    will now stop on any merits issues.

25          THE COURT:  Okay.  Thank you.

1              Let me turn back to the plaintiffs,

2    Ms. Masurovsky, Is there anything else you want to say or

3    ask?

4              MS. MASUROVSKY:  No, Your Honor.  Thank you.

5              THE COURT:  Okay.  Well, then this has been

6    very helpful, and we are going to proceed consistent with

7    what I have been inclined to do frankly since getting my

8    opinion out.  Certainly since reviewing the joint status

9    report, since indicating to you my inclinations in the order

10   setting this call, since repeating it at the beginning of

11   this call, and now having had the benefit of the chance to

12   talk these issues through with you, it still seems to me

13   that the defendants have won this case in front of me.

14             It was a challenging issue that was before me.

15   And it took me much longer than I had anticipated to get to

16   it, and the plaintiffs have been presumably enjoying the

17   benefits of a market that the defendant was kept from given

18   in large part due to my delay in getting this difficult

19   issue resolved.

20             At a high level then, thinking about the overall

21   equities here, my work should be basically done.  My case

22   should not be stopping the defendants from getting to

23   market.  The FDA may or may not give final approval.  That

24   is not for any of us to decide.

25             But there is another court.  Obviously, the

Federal Circuit.  They may wish to step in and review this

at the plaintiff's request.  They may wish to do it quickly.

They may wish to slow down the defendant.

I want to create an opportunity both for the

plaintiff to pursue those avenues and for the Federal

Circuit not to have to figure out what, if anything, they

want to do in just a matter of hours or days.  And I think

it is fair for me to consider all of that.

To be more precise, with the test that applies

in situations like this, if I consider whether the plaintiff

has shown a reasonable or substantial likelihood of success

on appeal, the answer is "no" regardless of how you phrase

the test, but I do think it is fair to consider in the

analysis how difficult the decision on the motion was and

the arguably conflicting authorities that the parties and

the Court had to deal with.  So I think the plaintiff

doesn't meet their burden but it's not as if their showing

on this factor is anything like a nullity.

In terms of irreparable harm, I don't think the

plaintiffs have come forward with very much.  It seems

largely to relate to a different product that they're now in

the process of launching, not the product that this case was

about, not the product that the patent or the arguable patent

extension was based on.  And to the extent plaintiffs were

expecting to enjoy a market that was not one in which the

defendant was competing with them as they invested heavily

in launching this new drug, that may not have been a very

reasonable assumption given I think the at least superficial

strength they could have seen in the motion, from reading the

motion, from reading the brief, from attending the oral

argument, and from just simply understanding the nature of the

dispute here.  So I think that also further undermines the

purported showing of irreparable harm.

On balance of harms, I'm going to call that is a

draw.  I do see scenarios under which either side could be

harmed here:  The plaintiffs, because maybe I was wrong and

they should have an opportunity to introduce this new

product without competition for the defendants.  The

defendants harmed because they have arguably a very narrow

window in which they could launch their product without

facing, for instance, other generic competition.  So I will

call that a draw.

The reason I'm granting the two weeks of an

injunction really turns on the public interest factor.  I

think principally the public interest here is to give the

plaintiffs a small or short period of time in which to see

if they can get the higher court involved and in a way that

could lead to a change in outcome from the one that this

court thought was the right thing to do.  Given how much

time has passed since the case was filed, since the motion

1    was filed, since the motion was argued, I think adding two

2    more weeks of keeping the defendants off the market to

3    give the Federal Circuit the opportunity to do whatever

4    they wish to do is very strongly in the public interest,

5    even recognizing that there are other public interest

6    factors such as the interest in full and fair competition,

7    particularly from a product that I have found cannot be

8    kept off the market due to a patent that I have found has

9    expired.

10                So for all those reasons, the way we're going to

11   proceed is I will enter final judgment but not sooner than

12   Tuesday.  And at the same time as I enter final judgment, I

13   will enter an injunction order that enjoins the defendants

14   at least from making sales for 14 days from the date that I

15   enter the injunction.

16                The specific language of the final judgment

17   and the specific language of the injunction order are still

18   subject to first the parties' negotiations; and I do hereby

19   order that you meet and confer absolutely as soon as

20   possible to begin those negotiations, and subject to further

21   submissions from the parties.

22                What are those submissions?

23                By 6:00 p.m. on Monday -- and I recognize it

24   is a federal holiday, but by 6:00 p.m. on Monday, I need a

25   proposed final judgment, a final judgment order and a

1    proposed injunction order.  Ideally I'll get one version of

2    each, and you will tell me you agreed on all that.

3              Failing that, I need clean copies of your

4    competing proposals as well as a third version that shows me

5    where the differences are.  And in the event that there are

6    differences on either order, both sides can simultaneously

7    file by 6:00 p.m. on Monday letters, single-spaced letters

8    of up to three pages that address those differences and why

9    you propose what you are proposing.

10             On the security point, I am inclined to grant

11   some form of security.  I will leave that topic further and

12   particularly specifically what the security should look like

13   to the parties, but typically when there is an injunction

14   like this, some security would be provided, and I'm not

15   seeing a reason why I shouldn't follow that typical practice

16   here.

17             So that is my decision.  Please tell me what

18   else you want to talk about.  Any questions or anything

19   further on that, Ms. Masurovsky?

20             MS. MASUROVSKY:  Nothing from us, Your Honor.

21   Thank you.

22             THE COURT:  Okay.  And Mr. Musgrove?

23             MR. MUSGROVE:  Nothing from us substantively,

24   Your Honor.  I will commit to the Court and to plaintiffs to

25   drafting up the initial draft to send over to them and start

1    the meet and confer.

2                    THE COURT:  Okay.  Thank you for that.  We'll

3    look for your submissions on Monday.  Thank you all for

4    your time.  I do hope you manage to enjoy the weekend

5    notwithstanding what you are working on for me.

6                    Take care.  Good-bye.

7                    (Telephone conference ends at 5:18 p.m.)

8

9         I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

10

11                              /s/ Brian P. Gaffigan
                              Official Court Reporter
12                              U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIOGEN INTERNATIONAL GMBH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-2054-LPS |
| | ) |
| BANNER LIFE SCIENCES LLC, | ) |
| | ) |
| Defendant. | ) |

## **[PROPOSED] ORDER**

At Wilmington, this __ day of_____, 2020, the Court, having considered

Plaintiff's Unopposed Motion To Redact Portion Of January 17, 2020 Transcript (the "Motion"),

IT IS HEREBY ORDERED that:

1.       the Motion is GRANTED; and

2.       any publicly available copies of the transcript of the January 17, 2020

conference in the above-captioned case, including but not limited to the transcripts that are or

will be available by remote electronic access, shall be redacted consistent with the highlighted

portions of the transcript as set forth in Exhibit A to the Motion.

_____
Chief Judge